IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

LAYTON FIRENG,                           :
      Plaintiff,                     :
                          :     CIVIL DOCKET NO.
Vs.                                      :
                          :
RADNOR TOWNSHIP,                         :     JURY TRIAL DEMANDED
      Defendant                      :

## COMPLAINT

Plaintiff, Layton Fireng, by and through his counsel, Everett Cook, Esquire, files

the within civil complaint and in support thereof states and avers as follows:

## I.    JURISDICTION AND VENUE

Jurisdiction is proper as Federal courts have original subject matter jurisdiction

over all cases that arise under (are based upon) any federal law. The within action is a

complaint for violation of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights

under the United States Constitution.

Venue is proper in the Eastern District as all of the incidents occurred in Wayne,

Radnor Township, Pennsylvania which is located in the Eastern District of

Pennsylvania.

## II.    PARTIES

1. Plaintiff Layton Fireng is an adult individual with a resident address of 5 Marlyn

   Circle, Wayne, Pennsylvania 19087.

2. Defendant is Radnor Township with a business address of 301 Iven Avenue,

   Wayne, Pennsylvania 19087.

## III.    FACTS

3.  November 1, 2015 Plaintiff received a phone call from a customer of his business that he was standing inside the Plaintiff's house with the Superintendent of Police of Radnor Township.

4.  Plaintiff arrived at his home to find the street full of police, the bomb squad, and a S.W.A.T. team.

5.  Plaintiff upon exiting his vehicle was approached by Superintendant William Colarulo.

6.  Superintendant Colarulo raised the question of Plaintiff's mental health.

7.  Superintendant Colarulo then demanded that Plaintiff surrender his gun.

8.  Superintendant Colarulo's explanation for asking for Plaintiff's gun was that this was a crime scene and the police felt safer with all guns under their control.

9.  When Plaintiff inquired as to what was going on, he was told that there was a complaint that the police were investigating.

10. He was told that when they were at the back door of his home they believed that they smelled a dead body and that they broke the door open to investigate.

11. When the Plaintiff asked what they were looking for, he was told about a jar of hydroquinone (a chemical which plaintiff uses to develop photographs). Plaintiff was then asked if he wanted to go to the hospital for an examination; Plaintiff declined.

12. Plaintiff inquired as to whether he was under arrest, he was told no and subsequently locked in the back of a police car for several hours.

13. Various news outlets reported on the incident quoting authorities and casting Plaintiff in a "bad light" to the community and all who read the reports.

14. The mainlinemedianews.com under the title "Bomb squad called to a house in Wayne" quoted Superintendent William Colarulo called 5 Marlyn Circle a "hoarder house".

15. In the same article Lt. Chris Flanagan stated that the homeowner had not been charged and agreed to speak with a "special team that deals with hoarding" and "We are getting him evaluated and making sure he's medically OK."

16. www.philly.com/News quoted William Colarulo, police superintendant as saying "it was the worst hoarding situation the township had experienced."

17. Linda Stein a reporter for mainlinemedianews.com reported that Lt. Chris Flanagan had stated that Plaintiff had agreed to with a "special team that deals with hoarding" and "We are getting him evaluated and making sure he's medically OK..."

18. Due to the coverage of the incident Plaintiff received numerous calls and inquiries regarding the situation from friends, family and others that had read about the incident.

19. During this time when Plaintiff asked if he was under arrest again he was told no; however, he was not free to roam – even on his own property.

20. All this was done in view of his neighbors and passersby.

21. Several hours later a Sergeant and a Detective came to speak with the Plaintiff and he was told he was not being charged with any crime; however, he could not go on the property, and that he should meet them at the police headquarters the next day.

22. He was told that the main issue was his wellbeing.

23. Plaintiff has lived in this house since 1939.

24. Plaintiff was never shown or made aware of a search warrant being issued.

25. On November 5, 2015, Plaintiff received a notice of condemnation of the 5 Marlyn Circle residence a copy of which is attached hereto and made a part hereof as Exhibit "A".

26. As part of the condemnation, Plaintiff was excluded from his residence. As of the date of the filing of this Petition, Plaintiff remains excluded from his residence.

27. In the almost two years since the condemnation there has never been a hearing scheduled nor any meeting of record held with the Township.

28. Defendant also seized several items of personal property including: ammunition, guns, and photographic equipment, which have never been returned to Plaintiff.

29. Plaintiff did request an accounting of all the items taken from his property, to date none has ever been received.

30. Plaintiff received a Notice of Condemnation and did respond to the Notice within five (5) days.

31. Plaintiff never received a Notice of a hearing of any kind.

32. Defendant stopped electric service to the property.

33. Defendant stopped mail service to the property.

34. Defendant stopped the phone service to the property.

35. Defendant's actions constitute a taking of Plaintiff's property.

36. Plaintiff has never been compensated for the taking.

37. Defendant's actions have deprived Plaintiff of liberty and/or property without the due process of law.

38. Defendant's actions constitute an illegal search.

39. Defendant's actions constitute and illegal seizure.

40. Since the November 1, 2015, Plaintiff has incurred numerous expenses and suffered from mental and physical effects as a direct result of the actions of the Defendant.

## IV.    CAUSES OF ACTION

34. Violation of Plaintiff's Due Process (Fourth and Fourteenth Amendments), alternatively Due Process as applied claim, alternative claim Taking claim under Due Process; Illegal Search and Seizure under the Fifth Amendment; False Imprisonment under the Fifth Amendment.

**COUNT I**
**LAYTON FIRENG VS. RADNOR TOWNSHIP**
**DUE PROCESS**

41. Plaintiff hereby incorporates by reference the averments contained in Paragraphs one through thirty-three hereof as though the same were more-fully set forth at length below.

42. Constitution of the United States of America states that no citizen should be denied life, liberty, or property without the due process of law.

43. Plaintiff is deprived of the use of his property for almost two (2) years without ever having a hearing held.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant Radnor Township for compensatory damages, punitive damages, interest, costs and attorneys fees.

## ALTERNATE COUNT I
## LAYTON FIRENG VS. RADNOR TOWNSHIP
## AS APPLIED CLAIM

44. Plaintiff hereby incorporates by reference the averments contained in Paragraphs one through thirty-six hereof as though the same were more-fully set forth at length below.

45. The actions of the Defendant are an unconstitutional application of regulations to Plaintiff's property.

46. The actions of the Defendant constitute arbitrary governmental conduct.

47. As applied, the regulations do not advance legitimate government interests.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant Radnor Township for compensatory damages, punitive damages, interest, costs and attorneys fees.

## ALTERNATE COUNT I
## LAYTON FIRENG VS. RADNOR TOWNSHIP
## TAKINGS

48. Plaintiff hereby incorporates by reference the averments contained in Paragraphs one through forty hereof as though the same were more-fully set forth at length below.

49. The actions of the Defendant constitute a taking under the Fifth Amendment of the Constitution.

50. The Defendant is required to compensate Plaintiff for regulations that excessively restrict the use of his private property.

51. Plaintiff has never been compensated for the taking of his private property.

52. The Fifth Amendment requires government to compensate land owners for regulations that excessively restrict the private use of property.

53. Plaintiff has been denied use of his property for almost two (2) years and has never been compensated for the excessive restriction of Plaintiff's use of his private property.

54. Physical takings occur when the government actually occupies or condemns land or property.

55. Defendant did condemn the Plaintiff's property located at 5 Marlyn Circle, Wayne, Pennsylvania 19087.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant Radnor Township for compensatory damages, punitive damages, interest, costs and attorneys fees.


**COUNT II**
**LAYTON FIRENG VS. RADNOR TOWNSHIP**
**ILLEGAL SEARCH AND SEIZURE**

56. Plaintiff hereby incorporates by reference the averments contained in Paragraphs one through forty-eight hereof as though the same were more-fully set forth at length below.

57. The United States Constitution guarantees that citizens shall be secure in their person and property.

58. Plaintiff's house was searched without a search warrant ever being provided.

59. Plaintiff's property was seized and is still being held by Defendant without a search warrant ever being provided.

60. These illegal search and seizures constitute a violation of Plaintiff's constitutional rights.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant Radnor Township for compensatory damages, punitive damages, interest, costs and attorneys fees.

## COUNT III
## LAYTON FIRENG VS. RADNOR TOWNSHIP
## FALSE IMPRISONMENT

61. Plaintiff hereby incorporates by reference the averments contained in Paragraphs one through fifty-three hereof as though the same were more-fully set forth at length below.

62. The United States Constitution guarantees that citizens shall be secure in their person and property.

63. Plaintiff was locked in the back of a police car for several hours after being told he was not being charged with a crime.

64. After several hours of confinement Plaintiff was again told that he was not being charged with a crime and then released.

65. To date Plaintiff has not been charged with any crime relevant to the above stated incidents. Accordingly, these actions constitution a violation of Plaintiff's constitutional rights against false imprisonment.

**WHEREFORE,** Plaintiff demands that judgment be entered in his favor and against Defendant Radnor Township for compensatory damages, punitive damages, interest, costs and attorneys fees.

Respectfully submitted,

Date: October 31, 2017

By:/s/ Everett Cook
    Everett Cook, Esquire
    Attorney for Plaintiff
    I.D. No. 202039

**LAW OFFICES OF EVERETT COOK, P.C.**
2309 MacArthur Road
Whitehall, PA 18052

Phone:    610-351-3566
Fax:    610-351-3556

## VERIFICATION

I, Layton Fireng, verify that the statements made in the foregoing pleading are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.


Date: _10 - 31 - 17_

_____
Layton Fireng

EXHIBIT "A"

JAMES C. HIGGINS
*President*

JOHN FISHER
*Vice-President*

RICHARD F. BOOKER

DONALD E. CURLEY

JOHN NAGLE

ELAINE P. SCHAEFER

CHERYL GRAFF TUMOLA



**RADNOR TOWNSHIP**
301 IVEN AVENUE
WAYNE, PENNSYLVANIA 19087-5297

Phone (610) 688-5600
Fax (610) 971-0450
www.radnor.com

ROBERT A. ZIENKOWSKI
*Township Manager*
*Township Secretary*

JOHN B. RICE, ESQ.
*Solicitor*

JOHN E. OSBORNE
*Treasurer*

# NOTICE OF CONDEMNATION

## PROPERTY MAINTENANCE

**Person Responsible for Violation:** Layton Fireng

**Mailing Address:** 5 Marlyn Circle, Wayne, PA 19087

**Date of Issuance:** 5 November 2015

**Location of Condemned Property:**

5 Marlyn Circle, Wayne, PA 19087
(Delaware County PIN 36-01-00373-00)

**Delivered:** _____ In person to Owner of Record
____X____ By Regular and Certified Mail
7011 2000 0001 6035 5223

In accordance with Section 108 of the 2009 edition of the International Property Maintenance Code, adopted as the Property Maintenance Code of Radnor Township (Code) under Chapters 222 of the Radnor Township Code, Radnor Township has found the Property located at 5 Marlyn Circle to be unfit for human occupancy and hereby **CONDEMNS** this Property. Therefore, the dwelling shall be vacated immediately and shall be secured to prevent entry by unwanted individuals. The Property may not be occupied except as follows:

- Adults may occupy this dwelling during the hours of 7:00am to 5:00pm only for the sole purpose of abating the violations.

- There shall be no other activity on the Property, including cooking, sleeping, conducting other business etc., other than the activity of abating the violations.

- There shall be no children permitted in the dwelling until a Township Codes Official approves the re-occupancy of children.

This Notice of Condemnation is based upon all of the violations listed in the attached Notice of Violation issued against this Property. The Property shall not be reoccupied until all of these violations have been corrected. A compliance re-inspection shall be conducted by this office before the dwelling is re-occupied. Permission shall be obtained from this office before entry into the structure for repairs or cleaning.

You have the right to appeal this Notice to the Radnor Township Code Appeals Board. YOU MUST FILE THIS APPEAL WITHIN TEN (10) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE.

Failure to comply with this Notice within the time limits specified above constitutes a violation and is subject to a fine of up to $1,000.00 per day, plus all court costs and reasonable attorney's fees, unless an appeal is filed with the Radnor Township Code Appeals Board within 10 days of the date of issuance of this Notice. Each day that a violation continues shall be considered a separate offense punishable by the above-described fines and penalties. In accordance with Section 106.3 of the Code, all costs incurred by the Township in enforcing this matter shall be charged against the Property and shall be a lien upon this property.

You should take the following action immediately:

Respond to me in writing within five (5) days acknowledging receipt of this Notice and stating what actions you have taken or will take to bring your property into compliance with the Code. This response should be directed to me at the Radnor Township Municipal Building, 301 Iven Avenue, Wayne, PA 19087-5297 or at kkochanski@radnor.org. If you do not take appropriate corrective action, I shall recommend to the Township Board of Commissioners that a civil action be filed against you in Court.

Sincerely,

Kevin W. Kochanski, RLA, CZO
Director of Community Development

CC:    Property File
       Commissioner James Higgins
       Robert Zienkowski, Township Manager
       Peter Nelson, Township Solicitor

**JAMES C. HIGGINS**
*President*

**JOHN FISHER**
*Vice-President*

**RICHARD F. BOOKER**

**DONALD E. CURLEY**

**JOHN NAGLE**

**ELAINE P. SCHAEFER**

**CHERYL GRAFF TUMOLA**

**ROBERT A. ZIENKOWSKI**
*Township Manager*
*Township Secretary*

**JOHN B. RICE, ESQ.**
*Solicitor*

**JOHN E. OSBORNE**
*Treasurer*



**RADNOR TOWNSHIP**
301 IVEN AVENUE
WAYNE, PENNSYLVANIA 19087-5297

Phone (610) 688-5600
Fax (610) 971-0450
www.radnor.com

# NOTICE OF VIOLATION
### PROPERTY MAINTENANCE

**Person Responsible for Violation:**   Layton Fireng

**Mailing Address:**      5 Marlyn Circle, Wayne, PA  19087

**Date of Issuance:**   5 November 2015

**Location of Property in Violation:**    5 Marlyn Circle, Wayne, PA 19087

**Delivered:**   _____ In person to Owner of Record
     ___X___ By Regular and Certified Mail and Email
         7011 2000 0001 6035 5223

In accordance with Sections 106 and 107 of the 2009 edition of the International Property Maintenance Code, adopted as the Property Maintenance Code of Radnor Township (Code) under Chapter 222 of the Radnor Township Code, Radnor Township is issuing this Notice of Violation and demanding that the following activities being conducted in violation of the Code immediately cease:

**Your property is declared "Unfit for Human Habitation" and may not be occupied except as follows:**
- **Adults may occupy this dwelling during the hours of 7:00am to 5:00pm only for the sole purpose of abating the violations.**
- **There shall be no other activity on the Property in Violation, including cooking, sleeping, conducting other business etc., other than the activity of abating the violations.**
- **There shall be no children permitted in the dwelling until a Township Codes Official approves the re-occupancy of children.**

Specific Violations:

### <u>UNSAFE STRUCTURES</u>

A.  Chapter 222, Section 108.1.1 Unsafe structures. An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

B. Chapter 222, Section 108.1.3 Structure Unfit for Human Occupancy. A Structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

C. Chapter 222, Section 108.1.5 Dangerous structure or premises. For the purpose of this code, any structure or premises that has any or all of the conditions or defects described below shall be considered dangerous:

1. Any door, aisle, passageway, stairway, exit or other means of egress that does not conform to the approved building or fire code of the jurisdiction as related to the requirements for existing buildings.

2. The walking surface of any aisle, passageway, stairway, exit or other means of egress is so warped, worn loose, torn or otherwise unsafe as to not provide safe and adequate means of egress.

6. The building or structure, or any portion thereof, is clearly unsafe for its use and occupancy.

8. Any building or structure has been constructed, exists or is maintained in violation of any specific requirement or prohibition applicable to such building or structure provided by the approved building or fire code of the jurisdiction, or of any law or ordinance to such an extent as to present either a substantial risk of fire, building collapse or any other threat to life and safety.

9. A building or structure, used or intended to be used for dwelling purposes, because of inadequate maintenance, dilapidation, decay, damage, faulty construction or arrangement, inadequate light, ventilation, mechanical or plumbing system, or otherwise, is determined by the code official to be unsanitary, unfit for human habitation or in such a condition that is likely to cause sickness or disease.

**Due to the amount of filth and rubbish throughout the house, the dwelling was found to be unsanitary, lacking maintenance, and in a general state of disrepair. In addition due to the amount of clutter and debris located throughout the house, there is not a safe means of egress in the case of an emergency. These constitute violations of this Code section.**

## EXTERIOR PROPERTY AREAS

D. Chapter 222 – Section 302.1 Sanitation. All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**Debris and rubbish was observed around the exterior of the property. These conditions constitute violations of this Code section.**

E.  302.3 Sidewalks and driveways. All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

**Due to excessive vegetative cover and overgrowth, the front walkway has become obstructed and is creating a hazardous condition. This is a violation of this Code Section.**

F.  Chapter 222, Section 302.5 Rodent harborage. All structures and exterior property shall be kept free from rodent harborage and infestation. Where rodents are found, they shall be promptly exterminated by approved processes which will not be injurious to human health. After extermination, proper precautions shall be taken to eliminate rodent harborage and prevent a re-infestation.

**Numerous areas in the rear of the property were observed to be conducive to rodent harborage due to the amount of clutter and debris. This includes the rear porch, along the right side of the dwelling, the large pile of tree and shrub branches, and in and around the accessory shed. This constitutes a violation of this Code Section.**

G.  Chapter 222, Section 302.7 Accessory structures. All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**The accessory shed appeared to be in a state of disrepair. Due to the amount of debris in and around this structure, a full assessment of its condition could not be made.**

### EXTERIOR STRUCTURE

H.  Chapter 222 – Section 304.1 General. The exterior of a structure shall be maintained in good repair, structurally sound and sanitary as not to pose a threat to public health, safety or welfare.

**There are numerous areas where brick pointing was missing, wood was rotted or missing, gutters were missing, and paint that was peeling, flaking, and/or chipped. In addition, the light by the front door was broken and falling off the wall. These constitute violations of this Code section.**

I.  Chapter 222 – Section 304.1.1 Unsafe conditions. The following conditions shall be determined as unsafe and shall be repaired or replaced to comply with the International Building Code or the International Existing Building Code as required for existing buildings:

4.  Siding and masonry joints including joints between the building envelope and the perimeter of windows, doors and skylights are not maintained, weather resistant or water tight;

8.  Roofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of deterioration, fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects;

**Multiple areas around the outside of the building were missing pointing between the bricks and/or sealant between the windows/doors and the brick. This constitutes a violation of these Code sections.**

J.  Chapter 222 – Section 304.2 Protective treatment. All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences, shall be maintained in good condition. Exterior wood surfaces, other than decay resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints, as well as those between the building envelope and the perimeter of windows, doors and skylights, shall be maintained weather resistant and water tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion, and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces. Surfaces designed for stabilization by oxidation are exempt from this requirement.

**Numerous sections of wood trim showed signs of decay and/or had peeling, flaking, and/or chipped paint. This constitute a violation of this Code section.**

K.  Chapter 222 – Section 304.6 Exterior walls. All exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**There are several areas where the brick pointing was missing. In addition, there are multiple fascia and soffit boards that are missing, rotting, and/or in a state of disrepair. These constitute violations of this Code section.**

L.  Chapter 222 – Section 304.7 Roofs and drainage. The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

**There are multiple areas were gutters and down spouts are missing. This constitutes a violation of this Code section.**

M.  Chapter 222, Section 304.13 Window, skylight and door frames. Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight. Chapter 222, Section 304.13.2 Openable windows. Every window, other than a fixed window, shall be easily openable and capable of being held in position by window hardware.

**Multiple windows appeared to be inoperable and had vines growing through them. Peeling and flaking paint was observed on numerous windows. Due to the amount of clutter and debris, a full assessment as to each window's operability could not be conducted.**

N.  Chapter 222, Section 304.15 Doors. All exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units and sleeping units shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3.

**Peeling and flaking paint was observed on numerous doors. This constitutes a violation of this Code section.**

**INTERIOR STRUCTURE**

O. Chapter 222, Section 305.2 Structural members. All structural members shall be maintained structurally sound, and be capable of supporting the imposed loads.

**A portion of the roof rafter appeared to be deteriorating/rotten. This was observed through a hole in the ceiling/wall in the front bedroom. However, due to the amount of clutter and debris in this room, a complete assessment could not be made.**

P. Chapter 222, Section 305.3 Interior Surfaces. All interior surfaces, including windows and doors shall be maintained in good, clean and sanitary condition. Cracked or loose plaster, decayed wood and other defective surface conditions shall be corrected.

**Every room of the dwelling contained a significant amount of filth, clutter, debris, and rubbish. Peeling, flaking and cracking paint was also observed throughout the dwelling. There were several areas where the plaster was missing, cracking, or falling down. These conditions constitute violations of this Code section.**

Q. Chapter 222, Section 305.4 Stairs and walking surfaces. Every walking surface shall be maintained in sound condition and good repair.

**Several areas of the floor appear to be deteriorating. However, due to the extensive amount of clutter and debris located throughout the dwelling, a complete assessment could not be conducted.**

R. Chapter 222, Section 306.1 Component Serviceability. The components of a structure and equipment therein shall be maintained in good repair, structurally sound and in a sanitary condition.

**Numerous appliances were observed to be in a state of disrepair and inoperable. This constitutes a violation of this Code Section.**

S. Chapter 222, Section 308.1 Accumulation of rubbish or garbage. All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**Debris and rubbish was observed through the property, inside and out. This constitutes a violation of this Code Section.**

T. Chapter 222, Section 404.5 Food preparation. All spaces to be occupied for food preparation purposes shall contain suitable space and equipment to store, prepare and serve foods in a sanitary manner. There shall be adequate facilities and services for the sanitary disposal of food wastes and refuse, including facilities for temporary storage.

**The kitchen area was observed with a significant amount of clutter and filth and is being kept in an unsanitary condition. This constitutes a violation of this Code Section.**

U. Chapter 222, Section 504.1 Plumbing Systems and Fixtures. All plumbing fixtures shall be properly installed and maintained in working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures are designed. All plumbing fixtures shall be maintained in a safe, sanitary and functional condition.

**Several repairs and the installation of water heater were completed without the appropriate Township permits/approvals. It did not appear that these repairs were made in accordance with appropriate plumbing standards. In addition, it did not appear that any of the plumbing fixtures were in a sanitary condition. These conditions constitute violations of this Code section.**

V. Chapter 222, Section 505.4 Water heating facilities. Water heating facilities shall be properly installed, maintained and capable of providing an adequate amount of water to be drawn at every required sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110°F (43°C). A gas-burning water heater shall not be located in any bathroom, toilet room, bedroom or other occupied room normally kept closed, unless adequate combustion air is provided. An approved combination temperature and pressure-relief valve and relief valve discharge pipe shall be properly installed and maintained on water heaters.

**The installation of water heater was completed without the appropriate Township permits/approvals. It did not appear that this installation was made in accordance with appropriate plumbing standards. This constitutes a violation of this Code section.**

W. Chapter 222, Section 603.1 Mechanical appliances. All mechanical appliances, fireplaces, solid fuel-burning appliances, cooking appliances and water heating appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function.

**The installation of the house heater was completed without the required Township inspections. Without further inspection, it is unclear if this unit meets the requirements of this Code section.**

X. Chapter 222, Section 702.1 Means of Egress. A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the public way. Means of egress shall comply with the International Fire Code.

**Due to the amount of clutter and debris in the dwelling a clear means of egress has not been provided. This constitutes a violation of this Code section.**

Y.  Chapter 222, Section 704.2 Smoke alarms. Single or multiple-station smoke alarms shall be installed and maintained in Groups R-2, R-3, R-4 and in dwellings not regulated in Group R occupancies, regardless of occupant load at all of the following locations:

1. On the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms.

2. In each room used for sleeping purposes.

3. In each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

Single or multiple-station smoke alarms shall be installed in other groups in accordance with the International Fire Code.

**There were numerous smoke alarms that were missing or inoperable. This constitutes a violation of this Code section. Further, no carbon monoxide detectors were observed. A Carbon Monoxide detector should be provided on every level of the dwelling.**

Due to the enormous amount of clutter, debris, and other items limiting a complete visual inspection of the Property and dwelling, there may be additional issues that are undetectable at the present time. Before the Property is declared habitable, a re-inspection will be necessary to ensure no additional violations are present. This should take place once the cleanup is complete and before repair/restoration work begins to ensure all violations have been identified. Please note that all work shall be done in accordance with Radnor Township applicable codes by licensed contractors with appropriate permits issued by the Community Development Department.

Therefore, the dwelling shall be vacated immediately. It shall be secured to prevent entry by unwanted individuals. It shall not be reoccupied until the above listed violations have been corrected. A compliance re-inspection shall be conducted by this office before the dwelling is re-occupied. Permission shall be obtained from this office before entry into the structure for repairs or cleaning.

You have the right to appeal this Notice of Violation to the Radnor Township Code Appeals Board. YOU MUST FILE THIS APPEAL WITHIN TEN (10) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE.

Failure to comply with this Notice within the time limits specified above constitutes a violation and is subject to a fine of up to $1,000.00 per day, plus all court costs and reasonable attorney's fees, unless an appeal is filed with the Radnor Township Code Appeals Board within 10 days of the date of issuance of this Notice. Each day that a violation continues shall be considered a separate offense punishable by the above-described fines and penalties. In accordance with Section 106.3 of the Code, all costs incurred by the Township in enforcing this matter shall be charged against the Property in Violation and shall be a lien upon this property.

You should take the following action immediately:

Respond to me in writing within five (5) days acknowledging receipt of this Notice of Violation and stating what actions you have taken or will take to bring your property into compliance with the Code. This response should be directed to me at the Radnor Township Municipal Building, 301 Iven Avenue, Wayne, PA 19087-5297 or at kkochanski@radnor.org. If you do not take appropriate corrective action, I shall recommend to the Township Board of Commissioners that a civil action be filed against you in Court.

Sincerely,

Kevin W. Kochanski, RLA, CZO
Director of Community Development

CC:    Property File
       Commissioner James Higgins
       Robert Zienkowski, Township Manager
       Peter Nelson, Township Solicitor